UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| KNIGHT WALL SYSTEMS INC., <br><br> Plaintiff, <br><br> v. <br><br> ADVANCED ARCHITECTURAL PRODUCTS LLC, <br><br> Defendant. | CASE NO. 3:25-cv-05399-DGE <br><br> ORDER ON MOTION FOR TEMPORARY RESTRAINING ORDER (DKT. NO. 16), FOR DEFAULT JUDGMENT (DKT. NO. 17), AND TO VACATE ENTRY OF DEFAULT (DKT. NO. 30) |

**I       INTRODUCTION**

This matter comes before the Court on Defendant's motion to vacate the Clerk's entry of default (Dkt. No. 30) and Plaintiff's motion for a temporary restraining order ("TRO") (Dkt. No. 16). For the foregoing reasons, Defendant's motion to vacate the entry of default is GRANTED and Plaintiff's motion for a TRO is DENIED. Thus, Plaintiff's motion for default judgment (Dkt. No. 17) is DENIED AS MOOT.

ORDER ON MOTION FOR TEMPORARY RESTRAINING ORDER (DKT. NO. 16), FOR DEFAULT JUDGMENT (DKT. NO. 17), AND TO VACATE ENTRY OF DEFAULT (DKT. NO. 30) - 1

## II   BACKGROUND

On May 9, 2025, Plaintiff Knight Wall Systems Inc. ("KWS") filed a complaint alleging patent infringement, copyright infringement, false advertising, and violation of Washington's Unfair Business Practices Act against Defendant Advanced Architectural Products, LLC ("AAP"). (Dkt. No. 1 at 12–18). On May 13, 2025, Plaintiff served Defendant and on May 19, 2025, filed an affidavit of service. (Dkt. No. 12.) Defendant did not file an answer or otherwise respond to the complaint; accordingly, Plaintiff moved for entry of default. (Dkt. No. 14.) On June 11, 2025, the Clerk entered default against Defendant. (Dkt. No. 15.)

On July 24, 2025, Plaintiff moved for an ex parte TRO (Dkt. No. 16) and for default judgment (Dkt. No. 16.) On July 25th, the Court concluded that Plaintiff's TRO motion did not meet the stringent requirements for the issuance of a TRO without written or oral notice and ordered that Plaintiff serve a copy of the order on Defendant. (Dkt. No. 19 at 1.) The Court further ordered that Defendant reply to Plaintiff's TRO motion by Monday, July 28, 2025. (*Id.*) Defendant then made an appearance and timely submitted its reply, which stated it would also swiftly move to overturn the entry of Default. (Dkt. No. 17.) The Court held a hearing on July 30, 2025, and Defendant moved to vacate the entry of Default on July 31, 2025. (Dkt. No. 30.)

## III   DISCUSSION

**A. Motion to Set Aside Default**

Rule 55(c) of the Federal Rules of Civil Procedure provides that the Court "may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c). "To determine 'good cause', a court must 'consider[ ] three factors: (1) whether [the party seeking to set aside the default] engaged in culpable conduct that led to the default; (2) whether [it] had [no] meritorious defense; or (3) whether reopening the default judgment would prejudice' the other party." *United States v.*

*Signed Pers. Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010) (quoting *Franchise Holding II, LLC v. Huntington Restaurants Grp., Inc.*, 375 F.3d 922, 925–926 (9th Cir. 2004)).  The moving party bears the burden "of showing that any of these factors favor[ ] setting aside the default." *Franchise Holding*, 375 F.3d at 926.

When evaluating whether to set aside a default, courts should consider that "judgment by default is a drastic step appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits." *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984).  Accordingly, the "rules for determining when a default should be set aside are solicitous towards movants." *Mesle*, 615 F.3d at 1089.  District courts should "resolve[ ] all doubt in favor of setting aside the entry of default and deciding the case on its merits." *O'Connor v. State of Nev.*, 27 F.3d 357, 364 (9th Cir. 1994).  "The court's discretion is especially broad where . . . it is entry of default that is being set aside, rather than a default judgment." *Mendoza v. Wight Vineyard Mgmt.*, 783 F.2d 941, 945 (9th Cir. 1986).

1. Culpable conduct

A "defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and intentionally failed to answer." *Alan Neuman, Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988); *TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 697 (9th Cir. 2001), *overruled on other grounds by Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141 (2001).  "[T]o treat a failure to answer as culpable, the movant must have acted with bad faith, such as an 'intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process.'" *Mesle*, 615 F.3d at 1092 (quoting *TCI Group*, 244 F.3d at 697).  Conduct is "typically" considered "culpable for purposes of the [good cause] factors

where there is no explanation of the default inconsistent with a devious, deliberate, willful, or bad faith failure to respond." *TCI Group*, 244 F.3d at 698 (collecting cases).

Defendant's actions do not rise to the level of culpable conduct. Defendant explains that an "administrative mistake" resulted in its failure to timely file an answer or otherwise respond. (Dkt. No. 30 at 6.) As AAP's founder Matt Krause stated, AAP's registered service agent in the State of Washington is Northwest Registered Agent LLC ("Northwest Agent"). (Dkt. No. 24 at 2.) A former AAP employee's email address was listed with Northwest Agent as Defendant's point of conduct beginning on June 6, 2021. (*Id*.) When the employee left AAP in February of 2024, AAP was not aware that his email was Northwest Agent's only point of contact. (*Id*.) Accordingly, Northwest Agent's emails were received in the "unmonitored folder" of a former employee. (*Id*. at 3.) Krause explains that AAP's management first became aware that it had been served with a summons and complaint and was in default on July 23, 2025. (*Id*.) Two days later, counsel appeared for AAP in this litigation. (Dkt. No. 20.)

The administrative error that resulted in AAP's failure to respond indicates neglect rather than any kind of calculated gamesmanship. There is no evidence of bad faith or devious intent. While Plaintiff asserts that "Defendant's negligence indicates a lack of professional decorum regarding lawsuits," lack of professional decorum does not give rise to an inference of manipulativeness or malintent. (Dkt. No. 32 at 3.) The rapidity with which Defendant did appear once it received notice further indicates that Defendant's failure to answer was not intentional or in bad faith. *See Sundberg v. Shelton Sch. Dist*. No. 309, No. 3:23-CV-05717-DGE, 2024 WL 3818544, *2 (W.D. Wash. Aug. 14, 2024). Thus, first factor weighs in favor of finding good cause to set aside the entry of default.

2. <u>Meritorious defense</u>

"A defendant seeking to vacate a default judgment must present specific facts that would constitute a defense." *TCI Group*, 244 F.3d at 700. Still, "the burden on a party seeking to vacate a default judgment is not extraordinarily heavy." *Id.* At this stage, the Court need not determine whether any of the defenses would be successful but rather asks if "some possibility exists that the outcome of the suit after a full trial would differ from the result reached by the default." *Hutchings v. Snell & Co.*, LLC, No. 09-cv-4680-JCS, 2010 WL 1980165, at *4 (N.D. Cal. Apr. 23, 2010). Put simply, the defendant must "allege sufficient facts, that, if true, would constitute a defense." *Mesle,* 615 F.3d at 1094.

First, Defendant has put forth sufficient facts that, if true, could serve as a meritorious patent invalidity defense. In its TRO briefing, Defendant argues it would have been obvious to one of skill in the art to modify the D'Aloisio, Cunningham, or Burst prior art references to disclose the two independent claims of the '518 patent. (Dkt. No. 22 at 14) (*See* Dkt. Nos. 23-1, 32-2, 23-3.) Although "in general it must . . . be shown that two or more references together disclose all the limitations of the claim at issue" to prove invalidity for obviousness, in some circumstances, a claim limitation may be filled in with a skilled artisan's general knowledge or common sense. JONATHAN MASUR AND LISA LARRIMORE OUELLETTE, PATENT LAW CASES PROBLEMS AND MATERIALS 146 (3d. ed. 2023); *see also Arendi S.A.R.L. v. Apple Inc.*, 832 F.3d 1355, 1361 (Fed. Cir. 2016) ("Though less common, in appropriate circumstances, a patent can be obvious in light of a single prior art reference if it would have been obvious to modify that reference to arrive at the patented invention."). Defendant further asserts that a combination of D'Aloisio, Cunningham, or Burst with "any of the prior art references . . . disclosed in the '518 Patent" would render the two independent claims of the '518 patent obvious—but does not specifically explain the combination that teaches the limitation of the '518 patent. (Dkt. No. 22

at 14.) At this stage in the litigation, however, Defendant has sufficiently shown it could possibly prevail on an obviousness defense. Plaintiff does not address this invalidity argument in its response to Defendant's motion to overturn the entry of default. (*See* Dkt. No. 32 at 5.)

As for the copyright claim, Defendant has likewise submitted sufficient facts that, if true, constitute a defense. "To establish [copyright] infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tele. Serv. Co.*, 499 U.S. 340, 361 (1991) (citing *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 548 (1985)). The Ninth Circuit has distinguished between "broad" and "thin" copyright protection. "If there's a wide range of expression . . . then copyright protection is 'broad' and a work will infringe if it's 'substantially similar' to the copyrighted work." *Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 913–14 (9th Cir. 2010) (citation omitted.) But "[i]f there's only a narrow range of expression . . . then copyright protection is 'thin' and a work must be 'virtually identical' to infringe." *Id.* at 914 (citation omitted). "To illustrate, there are a myriad of ways to make an 'aliens-attack movie,' but 'there are only so many ways to paint a red bouncy ball on blank canvas.' Whereas the former deserves broad copyright protection, the latter merits only thin copyright protection." *Williams v. Gaye*, 895 F.3d 1106, 1120 (9th Cir. 2018) (quoting *Mattel,* 616 F.3d at 913–914.) Or, in the case of litigation about Bratz dolls, the Ninth Circuit explained that "[t]he expression of an attractive young, female fashion doll with exaggerated proportions is thus highly constrained" and entitled to thin copyright protection only. *Mattel,* 616 F.3d at 915.

Here, Defendant puts forward a cognizable claim that "[t]here are only so many ways a person can depict external building cladding in technical drawings," and therefore that the copyrighted images are entitled to very thin protection. (Dkt. No. 22 at 17.) Accordingly,

Defendant's argument that "[t]he apparent differences between the asserted designs and the accused deigns preclude a finding of substantial similarity," could constitute a sufficient defense. (Dkt. No. 22 at 19.)  Defendant presents a side-by-side image of the relevant technical drawings and points out that Plaintiff's design depicts two full walls whereas Defendant's design shows one full wall and a circular overlay; Plaintiff's design uses a cross-hatch pattern to indicate insulation whereas Defendant's design uses dotted lines; and Plaintiff's brackets are straight-edged while Defendant's are wavy.  (Dkt. No. 22 at 18–19.) Accordingly, a possibility exists that Plaintiff is not likely to succeed on its copyright infringement claim as the two drawings may not be substantially similar.  *Hutchings*, 2010 WL 1980165, at *4.

Next, to succeed on a false advertising claim under 15 U.S.C. § 1125, Plaintiff must prove:

> a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by lessening of the goodwill associated with its products.

*Wells Fargo*, 758 F.3d at 1071 (9th Cir. 2014) (quoting *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir.1997)).  Defendant has put forward two plausible defenses to Plaintiff's false advertising claim.  First, Defendant argues its statements are "demonstrably true." (Dkt. No. 22 at 19.)  Second, Defendant argues that "if KMS somehow can later prove the statements are not based in fact, they are still vague enough to amount to mere marketing puffery and thus not misleading."  (Dkt. No. 22 at 20.)

"To be actionable, 'a statement must be 'specific and measurable' and capable of being proven true or false.'"  *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 753

F. Supp. 3d 849, 889 (N.D. Cal. 2024) (quoting *Azoulai v. BMW of N. Am. LLC*, 2017 WL 1354781, at *8 (N.D. Cal. Apr. 13, 2017)). Defendant suggests that its statements "installs 2x faster" and "highest R-value among steel-based systems" are vague statements of puffery because they are not specific enough to be proven true or false. (Dkt. No. 22 at 20) ("2x faster than what? Under what conditions? What is defined as a 'steel based system'"?). Defendant compares this fact pattern to *Chapman v. General Motors LLC*, where the court found that the statement at issue "fail[ed] to indicate what benchmark the 11% figure is being compared to (*i.e.*, the trucks are 11% more fuel efficient than what?)" and thus concluded that it was not a "quantifiable promise that could constitute affirmative misrepresentation." 531 F. Supp. 3d 1257, 1287 (E.D. Mich. 2021); *see also Ariix, LLC v. NutriSearch Corp.,* 985 F.3d 1107, 1121 (9th Cir. 2021). At this juncture, these defenses are plausible and thus sufficient to weigh in favor of overturning the default.

Finally, the defenses to Plaintiff's first three claims together serve as a sufficient defense to the Washington Unfair Business Practices Act claim under Washington Revised Code § 19.86.020. To bring an Unfair Business Practices claim, Plaintiff must show "(1) an unfair or deceptive act or practice, (2) that occurs in trade or commerce, (3) a public interest, (4) injury to the plaintiff in his or her business or property, and (5) a causal link between the unfair or deceptive act and the injury suffered." *Indoor Billboard/Washington, Inc. v. Integra Telecom of Washington, Inc*., 170 P.3d 10, 18 (Wash. 2007). As discussed *supra*, Defendant has successfully shown that its activities may be perfectly above board and thus not constitute an unfair or deceptive act or practice.

Accordingly, the second factor weighs in favor of finding good cause to set aside the entry of default.

3.  Prejudice

Finally, "[t]o be prejudicial, the setting aside of a judgment must result in greater harm than simply delaying resolution of the case." *TCI Group*, 244 F.3d at 701. "[M]erely being forced to litigate on the merits cannot be considered prejudicial for purposes of lifting a default judgement." *Id*. A party is prejudiced when its ability to pursue its claim is actively "hindered," which entails "delay [that] must result in tangible harm such as loss of evidence, increased difficulties of discovery, or greater opportunity for fraud or collusion." *Id*. (quoting *Thompson v. American Home Assur. Co.*, 95 F.3d 428, 433–34 (6th Cir. 1996)). Plaintiff suggests that it has "lost the opportunity to enjoin A2P's infringing conduct during critical commercial activity." (Dkt. No. 32 at 6.) However, Defendant attests that it "has not completed a sale of a single Accused Product in the United States." (Dkt. No. 22 at 22.) And even if it had sold products, it does not appear that Plaintiff has incurred the kind of tangible harm contemplated by the Rule 60(b) standard.

Ultimately, "[w]here there has been no merits decision, appropriate exercise of district court discretion under Rule 60(b) requires that the finality interest should give way fairly readily, to further the competing interest in reaching the merits of a dispute." *TCI Group*, 244 F.3d 691, 696 (9th Cir. 2001). Thus, the factor also weighs in favor of setting aside the entry of default. For the reasons described herein, Defendant's motion to vacate the entry of default (Dkt. No. 30) is GRANTED. Thus, the motion for default judgment (Dkt. No. 17) is DENIED as MOOT.

**B. Motion for Temporary Restraining Order**

Plaintiff acknowledged in its briefing and at the hearing held on July 30, 2025, that its motion for a TRO was premised on the entry of default insofar as it expected that the Court would accept the facts pleaded—including all elements of patent and copyright infringement—as

admitted.  (Dkt. No. 27 at 6) ("[T]he Court need not (and should not) resolve the merits of claim construction or infringement at the TRO stage in a default posture . . . . [because] in the case of default . . . the facts pleaded are admitted.").  At the hearing, Plaintiff affirmed that it had not presented the Court with sufficient evidence to support a request for a TRO if the Court vacated the entry of default.  Accordingly, because Plaintiff's motion (Dkt. No. 16) as currently presented is fatally lacking in evidentiary support, it is DENIED.

### IV    CONCLUSION

Defendant's motion to vacate the entry of default (Dkt. No. 30) is GRANTED.  Accordingly, the motion for default judgment (Dkt. No. 17) is be DENIED as MOOT.  Plaintiff's motion for a temporary restraining order (Dkt. No. 16) is DENIED.

Dated this 5th day of August, 2025.

David G. Estudillo
United States District Judge